**KEFFLER BRIDGE COMPANY et al., Appellants,**

v.

**THE STATE OF OHIO et al., Appellees.**

[Cite as *Keffler Bridge Co. v. State* (1995), 102 Ohio App.3d 270.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 94APE09–1418.

Decided March 30, 1995.

*Harrington, Huxley, Smith, Mitchell & Reed, John C. Litty, Jr.,* and *Charles J. Kay; Chester, Willcox & Saxbe, John J. Chester* and *Donald C. Brey,* for appellants.

*Betty D. Montgomery,* Attorney General, and *Lauren M. Ross,* Assistant Attorney General, for appellee state of Ohio, Department of Transportation.

*Carlile, Patchen & Murphy* and *Michael H. Igoe,* for appellee Velotta Co., Inc.

CLOSE, Judge.

Plaintiffs-appellants, Keffler Bridge Company and Keffler Construction Company, appeal from a judgment of the Franklin County Court of Common Pleas, denying their request for injunctive relief and granting judgment in favor of defendants-appellees, Ohio Department of Transportation ("ODOT") and Velotta Company, Inc. ("Velotta").

The instant case arises out of the bidding of an ODOT project known as "Summit Project 613 (1994)." In 1994, ODOT solicited bids for construction work needed for the completion of the project. The deadline for all bids was August 16, 1994, at 10:00 a.m. Upon the opening of the bids, Velotta was the lowest bidder. Appellants were the second lowest bidder. Accordingly, the project was awarded to Velotta.

By their complaint filed on September 1, 1994, appellants sought to enjoin ODOT from entering into the highway construction contract with Velotta. The court was also requested to enter a declaratory judgment, holding that the contract should have been awarded to appellants. By its entry dated September 26, 1994, the trial court denied the injunctive relief and rendered judgment in favor of appellees. It is from that judgment that appellants now appeal, raising the following assignments of error:

"I. Error of trial court in failing to find an abuse of discretion on the part of the director of the Ohio Department of Transportation when it promulgated and applied sections of the Ohio Administrative Code in direct contravention of the legislative mandate to the department as found in the existing statutes of Ohio.

"II. Error of trial court in finding Velotta's bid was responsive to the bid process even though Velotta was not prequalified to bid on the amount of the contract."

Appellants have also filed a motion to dismiss the instant appeal on the basis that the issues raised herein are moot. Upon careful consideration, appellants' motion is overruled. Accordingly, we proceed with a determination on the merits of the appeal. Appellants' assignments of error are interrelated and, as such, will be considered and addressed together.

To understand appellants' position in the instant appeal, it is first necessary to understand ODOT's bid prequalification process. Each year, contractors submit business and financial information to ODOT. Based on that information, ODOT issues Certificates of Qualification. These certificates state the aggregate amount of work a bidder may have under construction or uncompleted at any one time. The purpose of this process is to ensure that contractors are financially able to complete agreed upon work.

Under this process, a single contractor may receive multiple projects but the size of any subsequently awarded contract is dependent on the amount of other contracts in progress. Simply put, the amount of a contractor's prequalification is always diminished by the amount of contracts being presently performed. For example, if a contractor is prequalified for $10,000,000, but has a $5,000,000 project in progress, it may only be awarded a contract for an additional $5,000,000. However, if $2,000,000 worth of work is subbed to qualified subcontractors, the prime contractor's prequalification amount would only be decreased by $3,000,000, leaving an available amount of $7,000,000 to bid.

In the instant case, appellants argue that Velotta was ineligible to receive the contract at issue because its bid was in excess of its prequalification amount. Prior to the bidding of this project, Velotta had obtained a Certificate of Qualification, which authorized that Velotta could submit bids on state highway projects not to exceed $14,587,200. The amount of Velotta's bid on this ODOT project was $14,310,388.44. At the time of that bid, however, Velotta was involved in uncompleted work totaling $5,998,961. Therefore, on the date set for receiving the bids, Velotta was only qualified to bid $8,588,239. The difference between Velotta's bid and the amount of prequalification was $5,722,063.97.

However, when Velotta submitted its bid to ODOT, it indicated an intent to subcontract portions of the project. Velotta further indicated that the subcontracts would be broken into five categories of work, and the total amount to be subbed would be $6,845,000. After the date set for receiving bids, but before Velotta was awarded the contract, ODOT received commitment letters from seven of Velotta's subcontractors. The work proposed to those contractors totaled $6,988,226.74, thus bringing Velotta within its adjusted prequalification amount. On the date that evidence was submitted to the trial court, Velotta had secured eight qualified subcontractors to perform work in an amount totaling $7,621,123.41.

Nonetheless, appellants challenge that the ODOT director committed an abuse of discretion by accepting the post-bid commitment letters of Velotta's subcontractors and using the amounts of those bids to increase Velotta's prequalification. Since the commitments were not presented on the date set for submitting bids, it is appellants' position that appellees were unqualified bidders at the time they made their offer. As such, ODOT's contract with Velotta would be void. R.C. 5525.02. In support of their challenge, appellants argue that neither the Ohio Administrative Code nor R.C. Chapter 5525 permit ODOT to perform the post-bid activities at issue.

R.C. 5525.01 reads:

"The director shall require all bidders to furnish him * * * detailed information with respect to their financial resources, equipment, past record * * *."

R.C. 5525.02 reads:

" * * * [T]he Revised Code shall govern the qualification and classification of all bidders desiring to offer bids * * * all contracts attempted to be awarded to any other person than a bidder previously qualified in compliance with such sections shall be void. * * * "

R.C. 5525.08 reads:

"The director of transportation shall not consider any bid filed with him by any person who has not been qualified to bid. * * * No contract shall be awarded to any bidder not qualified to bid thereon at the time fixed for receiving bids."

The prequalification of bidders is further governed by R.C. 5525.03, 5525.04 and 5525.05, and Ohio Adm.Code Chapter 5501:2-3. R.C. 5525.03 provides:

" * * * The certificate of qualification shall contain a statement fixing the aggregate amount of work, for any or all owners, which the applicant may have under construction and uncompleted at any one time * * *. Subject to any restriction as to amount or class of work therein contained, such certificate of qualification shall authorize its holder to bid on all work on which bids are taken by the department of transportation during the period of time therein specified. * * * "

Ohio Adm.Code 5501:2-3-09 reads:

"(A) A subcontractor shall be considered as being properly qualified for work sublet to him * * * if he holds a certificate of qualification authorizing him to perform such work * * *.

" * * *

"(D) For the purpose of computing the net qualification of any certificate holder, the amount of any subcontract for which the director has granted permission under this rule, and for which the subcontractor has given payment and performance bond to the certificate holder, shall be considered completed work for such certificate holder."

Read together, these statutes and rules impose a threshold requirement that contractors must be prequalified for the amount of their bids at the time such bids are submitted. In this case, Velotta was prequalified for $14,587,200. Velotta submitted a bid for $14,310,388.44. Therefore, it is clear that Velotta bid under its ceiling amount by $260,000. Appellants, however, urge that the amount of Velotta's work in progress lowered its prequalification amount so as to render Velotta unqualified to bid the amount that it did, thus rendering the contract void. R.C. 5525.02 provides that all contracts awarded to unqualified bidders shall be void. We hold, however, that this section does not operate to bar bidders who (1) submit bids within their total prequalification limit; and (2) thereafter submit

commitment letters from subcontractors which will bring the prime contractor's bid within the adjusted prequalification limit.

In order to meet ODOT's bidding criteria, the total bid must first be within a contractor's pre-approved amount, less the amount of outstanding commitments. To make this assessment, a contractor's prequalification must be increased by the amount of work to be subbed to approved subcontractors. However, according to industry custom, subcontractors are generally not secured until the contract has been awarded. The relevant statutes and rules do not specifically require that subcontractor commitments be obtained by the bid deadline.

Recognizing the difficulty in accurately calculating the anticipated bids of subcontractors, it is unreasonable to interpret the relevant provisions as requiring these determinations to be made by the day set for accepting bids. Qualified bidders may be unable to prove their capacity until subcontractors have been formally secured. As such, it is more reasonable to require that the bid criteria be met as a prerequisite to the actual awarding of the bid.

With this in mind, the issue raised by appellants is essentially a difference between the qualification and certification of bids. In the instant case, appellee met the threshold requirement of submitting a qualified bid under the limit set by ODOT. Appellee then used the time between the bid submission and the ultimate award of the contract to certify to ODOT the amount of work to be distributed to subcontractors. The amount of that subbed work operated to increase prequalification, thus bringing its bid into compliance.

For the foregoing reasons, the director of ODOT did not err in awarding the contract to the lowest bidder, and the trial court did not err in affirming the director's determination.

Appellants' assignments of error are overruled, and the judgment of the trial court is affirmed.

*Motion to dismiss overruled;*
*judgment affirmed.*

JOHN C. YOUNG and TYACK, JJ., concur.